# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GINA VASOLI,<br>　　　　　Plaintiff,<br><br>　　v.<br><br>YARDS BREWING COMPANY, LLC,<br>AND TREVOR PRICHETT,<br>　　　　　Defendants. | CIVIL ACTION<br><br><br><br>NO. 21-2066 |

## MEMORDANDUM OPINION

Plaintiff Gina Vasoli has sued Defendants Yards Brewing Company, LLC and Trevor Prichett ("Defendants") for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1100, *et seq.* ("PFPO"), alleging that she was mistreated and ultimately fired because of her pregnancy. Pursuant to Federal Rule of Civil Procedure 12(b)(6) Defendants have filed a Motion to Dismiss. For the reasons that follow, the Motion will be denied.

## I.　　BACKGROUND[1]

In February 2013, Gina Vasoli got a job with Yards Brewing Company, LLC – a Philadelphia brewery – as the company's Communications and Marketing Manager. She stayed in that role for six years, until she was let go on September 5, 2019. Plaintiff maintains that she consistently demonstrated excellent performance, receiving a positive performance review in March 2019 and a raise in May 2019 from Yards CEO Trevor Prichett. Around the beginning of July 2019, Plaintiff told Prichett and her colleague, Christopher Hancq, that she was pregnant.

---

[1] In deciding a motion to dismiss, "a court must consider only the complaint, exhibits attached to the complaint . . . as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). The facts are therefore drawn solely from the Plaintiff's Complaint, as well as its attachments – her complaint to the Pennsylvania Human Rights Commission and her notice of litigation rights from the EEOC.

Plaintiff alleges that immediately after she told them she was going to have a baby, she was treated dismissively and with hostility and, ultimately, was fired.

Specifically, Plaintiff describes how Defendants ignored her request for professional advancement in July 2019. A few weeks after she stepped in to take over oversight of Marketing operations in the wake of her supervisor's termination a few weeks prior, given her increased responsibilities and her tenure with the company, she asked Hancq and Prichett "for recognition of her efforts and leadership in the marketing department". Defendants did not respond. Instead, two days later, Yards announced that Hancq would take over management of the Marketing Department and assume direct supervision over Plaintiff. Next, Defendants began systematically stripping away her job responsibilities without explanation and reassigning them to Hancq. These reassigned duties included running marketing team projects, communicating with vendors and outside firms, handling press and social media content, and managing orders and inventory.

In early September 2019, Plaintiff complained to Hancq in two emails and a third time face-to-face about the "significant reduction in [her] workload and responsibilities over the past two months" – in other words, since she had announced her pregnancy. Hancq "brushed her off and refused to engage with her," and did not reply to the emails. Two days later, Plaintiff was fired. Defendants cited financial constraints as the reason for her termination. Plaintiff, however, asserts that she was fired because she was pregnant and because she complained about her mistreatment as a result of her pregnancy.

In further support of her claim, Plaintiff alleges a pattern of gender and pregnancy bias at Yards with women being significantly underrepresented in management and leadership positions. For example, when she was fired, Plaintiff was the only woman on the five-member Marketing team, and one of four women in Yards' approximately fifteen management positions. She further describes how, after she returned from her first maternity leave in 2017, Defendants

had reassigned some of her work tasks to her direct reports. And, how when she was fired, Defendants retained three male employees in the Marketing Department, two of whom were less tenured and less experienced than her.

In short, Plaintiff asserts that Defendants unlawfully discriminated and retaliated against her because of her pregnancy by reducing her job responsibilities, ignoring her complaints, and ultimately terminating her in violation of Title VII, the PHRA, and the PFPO.

## II. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). The threshold of plausibility lies on the spectrum between a "sheer possibility" and a "probability" that a claim will be borne out. *Id.* at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 556 (2007). That is, the complaint's factual allegations must be more than "merely consistent with a defendant's liability" – they must allow the court to draw the "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In reviewing a complaint, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Blanyar v. Genova Prods. Inc.*, 861 F.3d 426, 431 (3d Cir. 2017) (internal quotations marks and citations omitted).

## III. DISCUSSION

Each of the statutes upon which Plaintiff bases her claims share similar legal frameworks and accordingly can be analyzed together. *See, e.g., Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002) (precedent interpreting Title VII and the PHRA is equally relevant to interpretation of each statute); *Ives v. NHS Hum. Servs., Inc.*, 2016 WL 4039644, at *2 n.1 (E.D.

3

Pa. July 28, 2016) ("Title VII, the PHRA, and the PFPO are so similar that employment discrimination under any one of them is generally presumed to constitute employment discrimination under the other two as well.").

### A. Plaintiff States a Claim for Pregnancy Discrimination

"To show pregnancy discrimination [under Title VII, the PHRA, and the PFPO], a plaintiff must establish: (1) she is or was pregnant and that her employer knew; (2) she was qualified for the job; (3) she suffered an adverse employment decision; and, (4) there was a nexus between her pregnancy and the adverse employment decision that would allow a fact-finder to infer discrimination." *Ahern v. EResearch Tech., Inc.*, 183 F. Supp. 3d 663, 669 (E.D. Pa. 2016) (citing *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 366 (3d Cir. 2008)). Defendants' challenge is that Plaintiff has not met the last element – causal nexus.[2] According to Defendants, Plaintiff alleges no discriminatory animus from Prichett, was terminated over two months after she announced her pregnancy, and fails to identify any non-pregnant or male individual in the Marketing Department who held a similar position and yet was not terminated.

Defendants misapprehend what is required to plausibly allege a nexus between pregnancy and an adverse employment action. There are "several ways" to establish nexus – and while any one alone may be sufficiently suggestive of a causal link, causation can also be established holistically "based upon review of all proffered evidence." *Ahern*, 183 F. Supp. 3d at 669 (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir.2000)); *see also Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 303 (3d Cir. 2007) ("[I]t matters not . . . whether each piece of evidence . . . is alone sufficient to support an inference of causation, so long as the evidence

---

[2] Plaintiff easily satisfies the other three elements of a pregnancy discrimination claim because she directly told the CEO, Prichett, that she was pregnant, she was qualified for her job and received a positive performance review and raise just prior to her termination, and she was stripped of job duties and then terminated.

4

permits such an inference when considered collectively."). The "broad array of evidence [upon which] a plaintiff may rely" to establish a causal nexus includes, *inter alia*, "disparate treatment, whereby a plaintiff shows that she was treated less favorably than similarly situated employees who are not in plaintiff's protected class," *C.A.R.S. Prot. Plus, Inc.*, 527 F.3d at 366, "temporal proximity between the pregnancy and the adverse act[,]" *Ahern*, 183 F. Supp. 3d at 669 (citation omitted), a "pattern of antagonism," or facts that show an employer gave "inconsistent explanations" for the adverse action. *Farrell*, 206 F.3d at 280, 287 (internal quotation marks and citation omitted).

Here, Plaintiff's allegations touch upon several of these concerns. She alleges that less than two weeks after she first revealed her pregnancy, Defendants (including Prichett) began treating her in a "hostile and dismissive manner," systematically and significantly reduced her workload over the subsequent two months, ignored her when she requested workplace recognition, moved her under the supervision of a coworker outside her department, repeatedly ignored her complaints, and, finally, fired her while retaining less experienced male, non-pregnant coworkers in the same department. All this occurred despite Plaintiff's positive performance review and raise just a month before disclosing her pregnancy. Considered holistically, and viewing the allegations in the light most favorable to Plaintiff, the pattern of antagonism in the immediate wake of her pregnancy announcement plausibly suggests a nexus between her pregnancy and termination.

### B. Plaintiff States a Claim for Retaliation

A plaintiff's retaliation claim will survive a motion to dismiss "if she pleads sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence . . . (1) she engaged in conduct protected by Title VII; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action."

5

*Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (citing *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 201 (3d Cir. 1994)). At issue here is the first prong.[3] Defendants contend that Plaintiff's alleged complaint about the "the significant reduction in [Plaintiff's] workload over the past two months" fails as a matter of law because it does not directly suggest that the reduction was related to her pregnancy.

Title VII's anti-retaliation provision protects "those who oppose discrimination made unlawful by Title VII[.]" *Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006). "Opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management." *Id.* at 343. A complaint "need not specify 'discrimination' or other 'magic words' to qualify as protected activity." *Newell v. Heritage Senior Living, LLC*, 2016 WL 427371, at *7 (E.D. Pa. Feb. 3, 2016), *aff'd*, 673 F. App'x 227 (3d Cir. 2016). However, it must "at least by context" identify an illegal employment practice under Title VII which the complainant opposes. *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006). That is, a complaint need not expound on every detail of a Plaintiff's allegations to survive a motion to dismiss, so long as it lends a reasonable expectation that the requisite details might emerge through discovery. *See Keita v. Delta Cmty. Supports, Inc.*, 2020 WL 6528749, at *2-3 (E.D. Pa. Nov. 5, 2020) (holding a complaint's vague allegation that "Plaintiff opposed her removal from her position because of her pregnancy" sufficiently suggestive of oppositional activity to survive a motion to dismiss).

Plaintiff's complaints to Defendants regarding her workload reduction, considered in the context of her allegations, plausibly amount to protected opposition to pregnancy discrimination.

---

[3] Defendants do not contest that termination is an adverse employment action, or that the temporal proximity of two days between the complaint and Plaintiff's termination plausibly suggests a causal nexus. *See Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (finding causal link where plaintiff was let go two days after filing EEOC complaint).

While her email to Hancq complaining about the reduction in her workload "over the last two months" may not have used the magic words "pregnancy discrimination," Plaintiff alleges that she sent this email almost exactly two months after she told Hancq and Prichett she was pregnant. Plaintiff therefore alleges that Defendants understood she was complaining about pregnancy discrimination. Moreover, Plaintiff claims she followed up once by email and once in person regarding her workplace treatment after the initial email complaint. Given these allegations, at this stage of the proceedings, there is at least a reasonable expectation that discovery will uncover proof Plaintiff engaged in protected activity, which is all that is required. *See Connelly*, 809 F.3d at 788-89.[4] Therefore, Plaintiff's retaliation claim withstands Defendants' motion to dismiss.

### C. Plaintiff States a Claim for Aiding and Abetting under the PHRA and PFPO

Finally, Plaintiff asserts that Prichett is individually liable for aiding, abetting, and compelling pregnancy discrimination under the PHRA and the PFPO. Pennsylvania and Philadelphia law, unlike Title VII, impose individual liability on those who "aid, abet, incite, compel, or coerce" unlawful employment discrimination. 43 Pa. C.S.A. § 995(e); Phila. Code. § 9-1103(h). At the motion-to-dismiss stage, "[c]ourts have permitted discriminatory aiding and abetting claims to proceed where a supervisor has terminated the plaintiff due to their protected status." *Ahern*, 183 F. Supp.3d at 671 (denying a motion to dismiss PHRA and PFPO individual liability claims where the plaintiff's supervisor allegedly forced her to resign because of her

---

[4]The Third Circuit has explained that, in employment discrimination cases, "for the purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss." *Connelly*, 809 F.3d at 788. This is because a *prima facie* case is "an evidentiary standard" which "defines the quantum of proof a plaintiff must present to create a rebuttable presumption of discrimination." *Id.* (citation omitted). "[I]dentifying the proof before there has been discovery would seem to put the cart before the horse." *Id.* at 788. Therefore, at the pleadings stage, "it is enough for [the plaintiff] to allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Id.* at 789.

7

pregnancy); *see also Davis v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren P.C.*, 20 F. Supp. 2d 885, 887 (E.D. Pa. 1998) (denying motion to dismiss where supervisor allegedly terminated plaintiff who requested accommodations for a disability). Here, Plaintiff alleges that Prichett, acting in his supervisory role as CEO, made the decision to terminate her employment. As discussed *supra*, Plaintiff plausibly claims this was an unlawful act of discrimination and/or retaliation. Plaintiff also asserts that Prichett aided or abetted her discrimination by treating her dismissively, ignoring her complaints and request for recognition, and participating in the decision to reduce her workload, all because of her pregnancy. Accordingly, Plaintiff's claim that Defendant Prichett aided, abetted, and compelled the unlawful employment discrimination she faced may proceed.

For the foregoing reasons, Defendants' motion to dismiss shall be denied. An appropriate order follows.

**July 6, 2021**                                                    **BY THE COURT:**


*/s/ Wendy Beetlestone*

**WENDY BEETLESTONE, J.**