IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GINA VASOLI,<br>          Plaintiff,<br><br>          v.<br><br>YARDS BREWING COMPANY, LLC,<br>AND TREVOR PRICHETT,<br>          Defendants. | CIVIL ACTION<br><br><br><br>NO.  21-2066 |

### MEMORANDUM OPINION

During discovery in this employment discrimination and retaliation case, Defendant Yards Brewing Company, LLC ("Yards"), and its Chief Executive Officer, Defendant Trevor Pritchett ("Pritchett"), independently (*i.e.*, without Plaintiff's input) chose 27 search terms and a limiting time period to electronically search for documents responsive to Plaintiff, Gina Vasoli's, document requests.  It soon became apparent that Defendants' search terms were underinclusive.  During the fact deposition of Chris Hancq, Plaintiff's supervisor, Hancq testified that he forwarded an email dated September 3, 2019 to Pritchett in which Plaintiff complained about the reduction in her workload during her pregnancy.  Hancq further testified that he sent the email to Pritchett around the time he received it, which was before Plaintiff was terminated.  While three versions of Plaintiff's email to Hancq were produced by Defendants during discovery, the version forwarded to Pritchett was not.  Plaintiff claims this email is integral to her retaliation claim because she was fired by Pritchett two days after it was sent to Hancq and that the unproduced version establishes that Pritchett was aware of Plaintiff's complaints before she was terminated.

Following Hancq's deposition, Defendants produced the email forwarded to Pritchett.  Plaintiff questioned why it had not been included in Defendants' productions and expressed that

1

she had "serious concerns" about their search for responsive documents. Defendants did not respond until Plaintiff sent a letter bringing the dispute to the Court's attention. At that point, Defendants explained that the search terms they had chosen would not have hit on any version of Plaintiff's September 3rd email, and that they had only found three produced versions of Plaintiff's email to Hancq because Plaintiff specifically mentioned them in her complaint and Defendants ran individual searches for them. Defendants did not conduct targeted searches for any other versions of these emails.

The Court held a telephonic discovery dispute conference during which it became clear that there were shortcomings with how Defendants went about searching for documents responsive to Plaintiff's discovery responses.[1] The Court contemplated as a sanction for Defendants' conduct that Plaintiff be permitted to take a deposition pursuant to Federal Rule of Civil Procedure 30(b)(6) of a person familiar with how the search had been conducted. Defendants protested because, in their view, their discovery process is protected and privileged. Their argument raised the present question: are the steps that a party takes in gathering documents to respond to a document requests protected from disclosure under the attorney-client privilege or the work-product doctrine?

In the Third Circuit, the attorney-client privilege is limited to confidential communications between a lawyer and his or her client to secure a legal opinion, legal services or assistance in a legal proceeding. *See Rhone-Poulenc Rorer Inc v. Home Indem. Co.*, 32 F.3d

---

[1] After the discovery conference call, Defendants sought to ameliorate their discovery shortcomings by conducting one additional ESI search with a new search term (Plaintiff's name) in two witness's email inboxes. That search resulted in Defendants producing approximately 841 pages of emails, more than double the total volume of their prior productions. They contend that the new production proves the soundness of their discovery methods because it did not contain "any new emails that would tend to *support* Plaintiff's claims." (emphasis added). Plaintiff, on the other hand, argues the newly produced documents are responsive to her discovery requests and relevant to the subject of her discrimination claims. To be clear, a document is discoverable where it is "*relevant* to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Nothing in the federal rules limits a party to only those materials which affirmatively support her claims.

851, 862 (3d Cir. 1994). The privilege is to be construed narrowly "[b]ecause it obstructs the truth-finding process", *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991), it therefore protects "*only* those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege." *Id*. at 1424 (3d Cir. 1991) (emphasis in original) (internal citations and quotations omitted). Relatedly, the work-product doctrine protects from disclosure intangible and tangible things prepared in anticipation of litigation that reflect an attorney's thoughts or opinions. *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661-62 (3d Cir. 2003). Neither the privilege nor the doctrine, however, protects facts from disclosure. *Upjohn Co. v. U.S.*, 449 U.S. 383, 395-96 (1981) (internal citation omitted).

While a party's discovery efforts likely involve communications with counsel, a factual description of what a party did to meet its discovery obligations under Rule 26 does not necessarily require the disclosure of confidential client communications. *See, e.g.*, *Ruiz-Bueno v. Scott*, 2013 WL 6055402, at *4 (S.D. Ohio Nov. 15, 2013) ("[T]here is a vast difference between describing, factually, what a party has done to comply with a document request and revealing discussions between counsel and the client about that process."). Moreover, the practical steps taken by an attorney and/or her client to identify responsive documents do not necessarily encroach on the thought processes of counsel. Instead, the steps used to identify responsive documents "go[] to the underlying facts of what documents are responsive to Plaintiffs' documents requests." *Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 110 (E.D. Pa. 2010). Thus, as neither the attorney-client privilege nor the work-product doctrine prohibit the disclosure of factual information, the steps that a party took to search for and produce relevant documents are discoverable.

A holding to the contrary would go against the spirit and purpose of the discovery rules.

While discovery is necessarily conducted in the adversarial context of litigation, Rule 26 of the Federal Rules of Civil Procedure demands cooperation between the parties' counsel to identify and fulfill legitimate discovery needs.  *See* Fed. R. Civ. P. 26 advisory committee's note to 1970 amendment ("In general, it is hoped that reasonable lawyers can cooperate to manage discovery without the need for judicial intervention.").  At each stage of the discovery process outlined in the Rule, counsel are expected to be transparent and communicate with one another so that they can reach agreement without judicial intervention.  These expectations hold even more true for electronic discovery.  For example, Rule 26(f)(3) requires the parties to develop a discovery plan, and specifically directs them to discuss "any issues about disclosure, discovery, or preservation of electronically stored information [*i.e.*, ESI]. . . ."  Fed. R. Civ. P. 26(f)(3)(C).  *See also In re Valsartan, Losartan, and Irbesartan Prods. Liability Litig.*, 337 F.R.D. 610, 618 (D.N.J. 2020) ("Electronic discovery requires cooperation between opposing counsel and transparency in all aspects of preservation and production of ESI." (internal citation omitted)).  Since communications between opposing counsel are not privileged and the discovery rules direct opposing counsel to communicate with each other when crafting their discovery procedures, it follows that, when counsel follows these rules and conducts discovery correctly, their methods are not necessarily privileged.[2]  It would go against reason to find that the steps a party takes to identify responsive documents are privileged when those steps result in an evasion of discovery obligations by not collaborating on their discovery and ESI search strategies.  Such

---

[2] Defendant cites to the Pennsylvania Rules of Professional Conduct to argue that "any discussion between an attorney and a client regarding 'information relating to representation of a client' is protected from discovery." Pa. R. Prof. Conduct 1.6(a).  This rule, however, discusses the confidentiality of such information, not its privileged status.  More on point to the issue at hand is Rule 3.4, which requires lawyers to be fair to opposing parties and counsel.  *See* Pa. R. Prof. Conduct 3.4.  The commentary to this rule advises against gamesmanship in discovery, stating that:  "The procedure of the adversary system contemplates that the evidence in a case is to be marshalled competitively by the contending parties.  Fair competition in the adversary system is secured by prohibitions against destruction or concealment of evidence, improperly influencing witnesses, *obstructive tactics in discovery procedure*, and the like."  *Id.* cmt. (emphasis added).

a holding would reward attempts to circumvent the collaborative process envisioned by the discovery rules and would run contrary to their instruction that this kind of gamesmanship should instead be met with sanctions. Fed. R. Civ. P. 26(g); Fed. R. Civ. P. 26 advisory committee's note to 1983 amendment ("Because of the asserted reluctance to impose sanctions on attorneys who abuse the discovery rules . . . Rule 26(g) makes explicit the authority judges now have to impose appropriate sanctions and requires them to use it.").

As nothing prevents the disclosure of discovery search methods, the sanction of a 30(b)(6) deposition into Defendants' discovery methods shall be imposed.

An appropriate order follows.

**BY THE COURT:**

/s/Wendy Beetlestone, J.

**WENDY BEETLESTONE, J.**